**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CECIL JOHNSON,**

          **Plaintiff,**

     **v.**                                    **Civil Action 2:15-cv-2622**
                                               **Chief Judge Michael H. Watson**
                                               **Magistrate Judge Jolson**


**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**


## REPORT AND RECOMMENDATION

Plaintiff, Cecil Johnson, filed this action under 42 U.S.C. § 405(g) seeking review of a

decision of the Commissioner of Social Security (the "Commissioner") partially denying his

applications for a period of disability, disability insurance benefits, and supplemental security

income.  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's statement of error

be **OVERRULED**, and that judgment be entered in favor of Defendant.

## I.     BACKGROUND

Plaintiff was born on August 1, 1957, and was fifty-one years old on September 5, 2008,

the alleged onset date of disability.  (Tr. 192, PAGEID #236).   He has a high school education

and was in special education classes throughout his schooling.  (Tr. 231, PAGEID #275).

Plaintiff has work experience as a presser in a dry cleaning business and yard worker in a scrap

yard.  (Tr. 226, PAGEID #270).

Plaintiff filed applications for a period of disability, disability insurance benefits, and

supplemental security income on March 11, 2009 (Tr. 188, PAGEID #232), alleging disability

due to numerous conditions, including:  a heart condition, high blood pressure, arthritis, depression, and pain and numbness in his left arm and shoulder.  (Tr. 225, PAGEID #269).  Plaintiff also alleged a learning disability, an inability to read, an inability to write more than simple 2-4 letter words, and an extremely low range of cognitive and verbal abilities.  (*Id.*).  Plaintiff's applications were denied initially (Tr. 134–39, PAGEID #178–83) and upon reconsideration (Tr. 125–27, PAGEID #169–71).  Plaintiff appealed the denial to the ALJ (Tr. 140–41, PAGEID #184–85), who held a hearing on November 22, 2009 (Tr. 549–97, PAGEID #604–52).  The ALJ issued a decision on January 23, 2012, denying Plaintiff's claims.  (Tr. 71–86, PAGEID #115–30).  Plaintiff requested and received review by the Appeals Council, which vacated the ALJ's decision and remanded the case.  (Tr. 91– 95, PAGEID #135–39).

On remand, the ALJ held a second hearing.  (Tr. 37–66, PAGEID #81–110).  The ALJ issued a decision following the hearing that made a number of findings pertaining to Plaintiff's age, educational level, residual functional capacity, and work experience.  (Tr. 112, PAGEID #156).  The ALJ determined that Plaintiff was an individual of advanced age as of July 31, 2012, has a marginal education, and is able to communicate in English as provided in 20 C.F.R. §§ 404.1564 and 416.964.  (*Id.*).  The ALJ made the following additional findings as to Plaintiff's educational level:

> The claimant testified that he graduated high school, but was in special education classes.  He alleged that he was unable to read or write.  On testing with WIAT-II-A, the claimant scored at a third grade level in Numerical Operations, a second grade level in Word Reading, and a second grade level in Spelling (Exhibit 5F, p. 6).  The Regulations provide that the numerical grade level an individual completed in school may not represent their actual educational abilities, which may be higher or lower (20 CFR §§ 404.1564 and 416.964).  Evidence provided in the record supports a finding that the claimant's educational level would best be considered marginal, from a functional standpoint.
>
> Counsel asserts that the claimant should be found to be illiterate based on

his allegations that he is unable to read (Exhibit 18E, p. 1).  As per the Regulations, an individual is considered illiterate if he cannot read or write a simple message such as instructions or inventory lists even though the person can sign his name.  Generally, an illiterate person has little or no formal schooling. Despite the claimant's allegations, school records do not lend themselves to supporting this assertion (see Exhibit 14E).  The claimant graduated high school; however, reported being in special education classes.  He is able to live independently without apparent significant difficulty.  While he may have difficulties, testing in 2008 revealed the claimant reading and spelling at a second grade level and while extremely low, is not indicative of being literate [sic]. Therefore, counsel's assertion is found less than persuasive.

(*Id.*).  The ALJ also found that Plaintiff had the residual functional capacity to perform light work prior to February 1, 2012 (Tr. 105, PAGEID #149) and the residual functional capacity to perform sedentary work after February 1, 2012 (Tr. 111, PAGEID #155).  Both before and after February 1, 2012, the ALJ determined that Plaintiff's residual functional capacity was limited to, *inter alia*, "simple repetitive tasks that do not require written instructions. . . ." (Tr. 105–106, PAGEID #149–50; Tr. 111, PAGEID #155).  Finally, the ALJ determined that Plaintiff's past relevant work was unskilled.  (Tr. 112, PAGEID #156).

Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that, prior to January 20, 2012, jobs existed in significant numbers in the national economy that Plaintiff could have performed.  (Tr. 113, PAGEID #157).  However, examining those same factors after January 20, 2012, the ALJ concluded that there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (Tr. 114, PAGEID #158).  Consequently, the ALJ concluded that Plaintiff "was not disabled prior to January 20, 2012, but became disabled on that date and has continued to be disabled" through the decision date.  (*Id.*).  Thus, the ALJ issued a partially favorable decision, finding that Plaintiff became disabled on, but not before, January 20, 2012.  (*Id.*).

Plaintiff again requested review by the Appeals Council, stating that he is "illiterate and

should have been awarded benefits back to" September 5, 2008, the alleged onset date of

disability. (Tr. 23, PAGEID #67). The Appeals Council granted review and issued a partially

favorable decision on February 25, 2015. (Tr. 18, PAGEID #62). Specifically, the Appeals

Council affirmed the ALJ's finding that Plaintiff was disabled beginning January 20, 2012, but

found the ALJ incorrect in his determination that Plaintiff could perform a range of light work

until February 1, 2012. (Tr. 18–19, PAGEID #62–63). Instead, the Appeals Council determined

that beginning January 20, 2012, Plaintiff's residual functional capacity was reduced to sedentary

work. (Tr. 19, PAGEID #63).

The Appeals Council later set aside its February 25, 2015, decision to consider additional

information. (Tr. 5, PAGEID #49). The Appeals Council issued a second decision on May 13,

2015, affirming the majority of the ALJ's findings under steps 1, 2, 3, 4, and 5 of the sequential

evaluation process. (Tr. 10, PAGEID #54). The Appeals Council agreed with the ALJ that:

> Prior to January 20, 2012, considering the claimant's age, education, work
> experience, and residual functional capacity, there were jobs that existed in
> significant numbers in the national economy that the claimant could have
> performed (20 C.F.R. 404.1569, 404.1569a, 416.969, and 416.969a).

> Beginning January 20, 2012, considering the claimant's age, education, work
> experience, and residual functional capacity, there are no jobs that exist in
> significant numbers in the national economy that the claimant could perform (20
> C.F.R. 404.1560(c), 404.1566, 416.960(e), and 416.966). On that date, Medical-
> Vocational Rule 201.09 directs a finding of disabled.

 (Tr. 11, PAGEID #55). Thus, consistent with its previous decision, the Appeals Council

affirmed the ALJ's finding that Plaintiff was disabled beginning January 20, 2012, found the

ALJ incorrect in finding that Plaintiff could perform a range of light work until February 1, 2012,

determined that Plaintiff's residual functional capacity was reduced to sedentary work beginning

January 20, 2012, and found that Plaintiff's disability began on January 20, 2012. (Tr. 9–11,

PAGEID #53–55).  The Appeals Council's May 13, 2015 decision is the final decision of the

Commissioner.  (*Id*.).

Plaintiff filed this case on July 20, 2015, seeking review of the Commissioner's decision

under 42 U.S.C. § 405(g).  (Doc. 3).  The Commissioner filed the administrative record on

September 24, 2015 (Doc. 9) and the supplemental administrative record on November 23, 2015

(Doc. 14).  Plaintiff filed a Statement of Specific Errors on December 21, 2015 (Doc. 17), the

Commissioner responded on March 22, 2015 (Doc. 23), and Plaintiff filed a Reply Brief on April

13, 2016 (Doc. 24).

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if

supported by substantial evidence, shall be conclusive. . . ."  "[S]ubstantial evidence is defined as

'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc.*

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th

Cir. 1994)).  The Commissioner's findings of fact must also be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To that end, the Court must "take into

account whatever in the record fairly detracts from [the] weight" of the Commissioner's

decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002).  "The findings of the

Commissioner are not subject to reversal merely because there exists in the record substantial

evidence to support a different conclusion. . . . This is so because there is a 'zone of choice'

within which the Commissioner can act, without the fear of court interference.'"  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## III.    DISCUSSION

The medical vocational guidelines in Appendix 2 to 20 C.F.R. Part 404, Subpart P, also known as the grid rules, apply if a claimant meets several factors related to age, educational level, residual functional capacity, and work experience. *See Robinson v. Comm'r of Soc. Sec.*, No. 5:14-cv-291, 2015 WL 1119751, at *6 (N.D. Ohio Mar. 11, 2015). "In general, where the characteristics of a claimant exactly match the characteristics in one of the rules of Appendix 2, the guidelines determine whether significant numbers of other jobs exist for the person or whether that person is disabled." *Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 757 (6th Cir. 2004) (citing *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003)). Relevant to this case is medical vocational rule 202.09, which directs a disability finding for a claimant who is closely approaching advanced age, is illiterate or unable to communicate in English, has the residual functional capacity for light work, and has an unskilled work history or no work history. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

In determining educational level, the relevant regulations recognize that the claimant's actual abilities may be higher or lower than the numerical grade which the claimant completed in school. 20 C.F.R. §§ 404.1564(b), 416964(b). In addition, the term education in this context includes consideration of how well a claimant is able to communicate in English. *Id*. The relevant categories used to assess a claimant's educational level include:

> (1) Illiteracy.   Illiteracy means the inability to read or write.   We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her own name.  Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education.    Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs.  We generally consider that formal schooling at a 6th grade level or less is a marginal education.

6

*Id.*  The regulations also allow the Commissioner to consider the amount of "formal or informal education" that a claimant may have had through "previous work, community projects, hobbies, and any other activities which might help" an individual to work.  *Id.*

In this case, Plaintiff argues that his disability status turns on whether he is illiterate because he satisfied the other factors set forth in medical vocational rule 202.09 as of his alleged onset date of disability.  (Doc. 17 at 7).  Accordingly, Plaintiff claims that, if the Commissioner had properly determined that he was illiterate, then medical vocational rule 202.09 would have directed a disability finding as of September 5, 2008.  (*Id.*).  To that end, Plaintiff assigns one error:

> The final decision of the Commissioner fails to make a specific finding as to Plaintiff's determined education level.  To the extent that the final decision was intended to affirm the earlier ALJ finding as to Plaintiff's marginal education level, the ALJ erred in failing to find Plaintiff to be illiterate.  Consequently, the Commissioner's determination that Plaintiff was not disabled prior to January 20, 2012, is not supported by substantial evidence.

(Doc. 17 at 1).  Thus, the single assignment of error consists of two arguments:  first, that the Appeals Council erred in its May 13, 2015, decision by failing to make a specific finding as to Plaintiff's educational level, and second, that, even if the Appeals Council affirmed the ALJ's finding as to his education level, the ALJ's finding was not supported by substantial evidence. (*Id.*).

### A.  Appeals Council's Finding on Plaintiff's Educational Level

The Appeals Council may review a case if there appears to be an abuse of discretion by the ALJ; there is an error of law; the ALJ's action, findings, or conclusions are unsupported by substantial evidence; or there is a broad policy or procedural issue that may affect the general public interest.  20 C.F.R. § 416.1470.  After reviewing the evidence, the Appeals Council "may

affirm, modify, or reverse the administrative law judge hearing decision or it may adopt, modify, or reject a recommended decision."  20 C.F.R. § 404.979.  In its decision, the Appeals Council may implicitly adopt an ALJ's findings.  *See, e.g.*, *Troupe v. Heckler*, 618 F. Supp. 248, 254 (S.D.N.Y. 1985) (stating that the "Appeals Council implicitly adopted these findings when it concluded that the plaintiff was not disabled at any time through the date of [its] decision").

In this case, Plaintiff argues that the Appeals Council erred by failing to make a specific finding on his education level.  (Doc. 17 at 7).  Contrary to Plaintiff's assertion, the Appeals Council examined Plaintiff's education in addition to other factors in adopting the ALJ's determination that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed before, but not after, January 20, 2012.  (Tr. 11, PAGEID #55) (noting that it considered Plaintiff's "age, education, work experience, and residual functional capacity").  In contrast, the Appeals Council did not adopt the ALJ's determination that Plaintiff's residual functional capacity changed from a range of light work to a range of sedentary work on February 1, 2012.  (Tr. 10, PAGEID #54).  As to that finding, the Appeals Council expressly determined it was "inconsistent with the date of disability found at Step 5 of the sequential evaluation process," and the proper date was January 20, 2012.  (*Id.*).

Plaintiff offers no authority that would suggest that it was improper for the Appeals Council to adopt the ALJ's determination on his educational level or that it is held to a heightened articulation standard on this issue.  And the Court's research has led it to conclude otherwise.  The Appeals Council may implicitly adopt findings.  *See Troupe*, 618 F. Supp. at 254.  Accordingly, Plaintiff's first argument is without merit.

**B.  Whether Substantial Evidence Supports the ALJ's Finding of Marginal Education**

Here, the ALJ examined the relevant regulations and determined that, while Plaintiff's educational abilities were extremely low, they were not indicative of illiteracy.[1] (Tr. 112, PAGEID #156).  Consistent with the regulations, the ALJ considered Plaintiff's high school education but did not equate that education to literacy.  (*Id.*); 20 C.F.R. §§ 404.1564(b), 416964(b).  Rather, the ALJ appropriately considered that his graduation from high school in special education was not necessarily indicative of his educational abilities and instead considered Plaintiff's individual abilities.  (Tr. 112, PAGEID #156).  In particular, the ALJ considered that Plaintiff is able to live independently without apparent significant difficulty, a factor which may be considered under the relevant law.  (*Id.*); *see, e.g., Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 516 (6th Cir. 2011) (noting consideration of the claimant's ability to read and write a grocery list); *Johnson v. Comm'r of Soc. Sec.*, 97 F. App'x 539, 541 (6th Cir. 2004) (finding substantial evidence supported the ALJ's finding that Plaintiff was not illiterate because, even though plaintiff testified he could not read or write, he went to school through the sixth grade, could purchase items and make change).  Indeed, Plaintiff's ability to live independently has support in his hearing testimony, which, for example, reflects that he is able to make change from a twenty-dollar bill.  (Tr. 38–39, PAGEID #639–40).  The ALJ further relied on testing from 2008, which revealed that Plaintiff reads and writes at a second grade level to conclude that Plaintiff is not illiterate.  (Tr. 112, PAGEID #156).  All told, the ALJ had more than a scintilla of evidence to conclude Plaintiff had a marginal education rather than an inability to read or write.

---

[1] The ALJ mistakenly used the word "literate" instead of illiterate, stating "[w]hile he may have difficulties, testing in 2008, [sic] revealed the claimant reading and spelling at the second grade level and while extremely low, is not indicative of being literate."  (Tr. 112, PAGEID #156).

Plaintiff relies on *Skinner v. Sec'y of Health and Human Servs.*, 902 F.2d 447, 450 (6th Cir. 1990), to challenge the ALJ's determination that his reading and spelling levels are not indicative of illiteracy.  But *Skinner* is distinguishable.  There, the Court determined that the ALJ incorrectly had assigned Plaintiff a marginal education where the record was "replete with evidence that [he was] illiterate."  *Id*. at 450.  That record included two expert opinions concluding that the plaintiff was illiterate.  *Id*. (stating that reliance on the test results in addition to the "expert opinions of Mr. Goldstein and Dr. Carter would have led to the proper determination that [the plaintiff] is illiterate and, therefore, disabled under the Grids").  In this case, Plaintiff has no such evidence—let alone the "overwhelming evidence" that the plaintiff had to support his claim in *Skinner.  Id.*

Plaintiff also argues that the ALJ's determination of his residual functional capacity, which limited him to jobs that did not require written instructions, should be determinative of his educational level.  At base, Plaintiff's position is that the residual functional capacity assigned to him by the ALJ is tantamount to a finding of illiteracy.  Plaintiff provides no case law in support of this position, and the Court is unaware of any.  Indeed, claimants are limited to performing simple tasks without written instructions for reasons other than literacy, such as borderline intellectual functioning or deficits in concentration, persistence, or pace.  *See, e.g.*, *Jones v. Comm'r of Soc. Sec.*, No. 3:14-cv-1236, 2015 WL 4394423, at *3 (N.D. Ohio July 16, 2015) (observing that the claimant was "limited to work that involve[d] no written instructions" due to, *inter alia*, borderline intellectual functioning); *Mundy v. Comm'r of Soc. Sec.*, No. 3:08-cv-430, 2010 WL 317014, at *9 (S.D. Ohio Jan. 26, 2010) (noting that the claimant was capable of "performing simple tasks with no written instructions" despite mental impairment).  Thus, the ALJ did not make a *de facto* finding of illiteracy by taking Plaintiff's marginal education into

10

account when determining his residual functional capacity.

More importantly, and as noted above, the ALJ determined that a finding of illiteracy was not warranted after examining the relevant evidence. Because it was within the ALJ's "zone of choice" to determine that the evidence was insufficient to support a finding of illiteracy, Plaintiff's second argument is likewise without merit. *See McClanahan*, 474 F.3d at 833.

## IV.    CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that Plaintiff's statement of error be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report

and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

      IT IS SO ORDERED.


Date:  June 29, 2016               <u>/s/ Kimberly A. Jolson</u>
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE